**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No.  17 BK 03283-LTS<br><br>(Jointly Administered) |
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,<br><br>Plaintiff,<br><br>v.<br><br>THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; HON. ANGEL PANTOJA-RODRÍGUEZ, in his official capacity as Secretary of the Puerto Rico Department of Treasury; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; HON. FRANCISCO J. DOMÉNECH FERNÁNDEZ, in his official capacity as Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority; and ALIXPARTNERS, LLP,<br><br>Defendants. | Adv. No. 25-_____-LTS |

---

[1] The Debtors in these title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

## ADVERSARY COMPLAINT

Plaintiff American Federation of State, County and Municipal Employees, acting for itself and on behalf of its two local chapters, SPU, AFSCME Council 95 and Capitulo de Retirados SPUC, their fourteen affiliated local unions in Puerto Rico ("AFSCME" or "Plaintiff"), by its undersigned attorneys, for its complaint against Defendants the Commonwealth of Puerto Rico (the "Commonwealth"), the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Hon. Angel Pantoja-Rodríguez, in his official capacity as Secretary of the Puerto Rico Department of Treasury (the "Secretary of Treasury"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the Hon. Francisco J. Doménech Fernández, in his official capacity as Executive Director of AAFAF (the "Executive Director"), and AlixPartners, LLP (the "Calculation Agent" and, collectively with the Commonwealth, the Oversight Board, the Secretary of Treasury, AAFAF, and the Executive Director, "Defendants"), alleges as follows:

## NATURE OF THE ADVERSARY PROCEEDING

1. AFSCME brings this adversary proceeding to protect and enforce the rights it bargained for on behalf of its members and as the very first party to support the Commonwealth Plan.[2] AFSCME's early support of the Commonwealth Plan served as a catalyst for settlements by other stakeholders and led to the Plan's confirmation. One of several key benefits AFSCME successfully negotiated in exchange for supporting the Commonwealth Plan was the right for the AFSCME/SPU Represented Employees to share in the Commonwealth's excess cash surplus for five Fiscal Years. This right was memorialized in the Commonwealth Plan and, among other

---

[2] Capitalized terms used but not defined herein have the meanings given them in the Fiscal Plan Surplus Sharing Calculation Agent Agreement, dated as of July 31, 2023 Among Commonwealth of Puerto Rico and AlixPartners, LLP, as Calculation Agent, with American Federation of State, County and Municipal Employees, SPU, AFSCME Council 95 and Capitulo de Retirados de SPU (as limited joinder party) (the "CAA"). The CAA is annexed hereto as **Exhibit 1**.

things, incentivized the AFSCME/SPU Represented Employees to ensure that the Commonwealth operated efficiently and in a fiscally responsible manner. If the Commonwealth achieved the fiscal responsibility Congress envisioned when it enacted the Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. § 2101 et seq. ("PROMESA"), then the AFSCME/SPU Represented Employees earned the right to share in the fruits of that success.

2. To determine whether the Commonwealth, in fact, has an excess cash surplus in any given Fiscal Year, AFSCME, the Commonwealth, and the Oversight Board agreed in advance to use the ***cash basis accounting methodology***. Under a cash basis calculation, income and expenses are recorded as they are received or paid. By agreeing to use the cash basis method, AFSCME, the Commonwealth, and the Oversight Board ensured that an excess cash surplus was determined based on amounts actually paid or received by the Commonwealth in a given Fiscal Year. The Commonwealth and the Oversight Board could not, therefore, prevent an excess cash surplus from being recognized in one Fiscal Year by attempting to earmark money to pre-fund potential expenses in future Fiscal Years. The cash basis methodology was expressly described in the Commonwealth Plan (which was approved by this Court) and the CAA.

3. If, for example, the Commonwealth had an excess cash surplus in Year 1 based on the amounts it actually received and paid, it had to share a pre-determined share of that surplus with the AFSCME/SPU Represented Employees. The Commonwealth could not avoid that result – and deprive the AFSCME/SPU Represented Employees of their bargained for rights – by earmarking the excess amounts to pay for future expenses in Year 2 or beyond because, under the cash basis calculation required by the Commonwealth Plan and the CAA, only expenses that were actually paid in Year 1 could be counted against the income received by the Commonwealth. Funds

3

that might need to be paid in the future – even to cover expenses that the Commonwealth already incurred – could not be deducted.

4. For the Fiscal Year beginning on July 1, 2023, and ending on June 30, 2024 (the "2024 Fiscal Year"), using the required cash basis calculation method, the Commonwealth had an excess cash surplus of more than $2 billion.

5. The AFSCME/SPU Represented Employees had the right, under the Commonwealth Plan and the CAA, to share in that excess cash surplus.

6. But, in an effort to shield billions of dollars of excess cash from being shared with AFSCME/SPU Represented Employees, the Oversight Board and the Commonwealth flouted the requirement of using a cash basis calculation method and instead deducted more than $2 billion from the excess cash surplus even though the Commonwealth had not spent a single penny of those funds by June 30, 2024, the close of the 2024 Fiscal Year.

7. The Calculation Agent – the entity that calculates the AFSCME/SPU Represented Employees' share of the excess cash surplus – blessed this blatant disregard of the terms of the Commonwealth Plan and the CAA, deferring entirely to the Oversight Board on the relevant calculations.

8. In effect, the Commonwealth, the Oversight Board, and the Calculation Agent rewrote the Commonwealth Plan and the CAA by changing the calculation method from a cash basis to a method of the Oversight Board's own design. Billions of dollars were deducted from the relevant calculations because the Oversight Board and the Commonwealth designated funds for the payment of potential future expenses, not because they actually had been spent, or even encumbered, in the 2024 Fiscal Year. That is ***not*** a cash basis calculation.

9.      Through these actions, the Commonwealth, the Oversight Board, and the Calculation Agent violated the terms of the Commonwealth Plan and the CAA, and have deprived AFSCME of the benefits it bargained for on behalf of its members when it decided to support the Commonwealth Plan and assist the Commonwealth in its efforts to achieve financial stability and regain access to capital markets.

10.      AFSCME has the right to enforce the terms of the Commonwealth Plan and the CAA, and the AFSCME/SPU Represented Employees have the right to share in the excess cash surplus for the 2024 Fiscal Year as determined through a cash basis calculation method that only includes income and expenses as received or paid during the 2024 Fiscal Year.

11.      Under the terms of the CAA, AFSCME is entitled to specific performance of the CAA and the Commonwealth Plan.

12.      Accordingly, Defendants should be required to take all steps necessary to revise the calculation of the AFSCME/SPU Share due the AFSCME/SPU Represented Employees for the 2024 Fiscal Year and promptly pay to the AFSCME/SPU Represented Employees the correct share to which they are entitled.

## THE PARTIES

13.      Plaintiff American Federation of State, County and Municipal Employees is a labor union representing public employees nationwide and affiliated with the AFL-CIO.  It has two local chapters in Puerto Rico:  Servidores Públicos Unidos, AFSCME Council 95, and Capítulo de Retirados de SPU, the independently chartered AFSCME chapter for retired employees of the Commonwealth of Puerto Rico.  Servidores Públicos Unidos, AFSCME Council 95, serves as the exclusive collective bargaining representative under Commonwealth law for over 9,000 active Commonwealth employees, ranging from social workers to corrections officers to nurses who care

5

for juvenile wards of the Commonwealth.  AFSCME is the AFSCME Representative under the CAA and authorized by section 205 of the CAA to bring this action.

14.     Defendant Commonwealth is a territory of the United States.

15.     Defendant Oversight Board is an entity within the territorial government of the Commonwealth created by PROMESA to provide a method for the Commonwealth to achieve fiscal responsibility and access to the capital markets.

16.     Defendant the Secretary of Treasury is the Secretary of the Puerto Rico Department of Treasury.  AFSCME sues the Secretary of Treasury, and any successors thereto, in his official capacity.

17.     Defendant AAFAF is a public corporation organized under the laws of the Commonwealth.

18.     Defendant the Executive Director is the Executive Director of AAFAF.  AFSCME sues the Executive Director, and any successors thereto, in his official capacity.

19.     Defendant AlixPartners, LLP is the Calculation Agent under the CAA.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction to grant the instant relief under 48 U.S.C. § 2166(a). *See also In re Fin. Oversight & Mgmt. Bd. For Puerto Rico*, 77 F.4th 49, 61-63 (1st Cir. 2023) (this Court retained jurisdiction over Oversight Board's efforts to enforce the Plan).

21.     Additionally, the Commonwealth Plan itself provides for the retention of jurisdiction.  Under section 3(c) of the Confirmation Order (as defined below), this Court "shall retain jurisdiction to enforce the terms" to "ensure compliance with the Plan" and "to adjudicate claims arising therefrom, including rights to specific performance." *See also* Commonwealth Plan, § 91.1.

6

22. Furthermore, section 411 of the CAA also provides that this Court "shall retain exclusive jurisdiction from and after the Effective Date of all matters arising from or related to the Commonwealth Plan and the Confirmation Order."

23. Finally, under 48 U.S.C. § 2166(b), this Court has exclusive jurisdiction of all property of the Commonwealth, wherever located.

24. This Court has personal jurisdiction over all of the Defendants pursuant to 48 U.S.C. § 2166(c).

25. This is an appropriate action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

26. An actual and justiciable controversy has arisen and exists between the parties with respect to the issues and claims alleged herein.

27. This action presents an actual controversy that is ripe for adjudication. As detailed below, Defendants have already caused the AFSCME/SPU Represented Employees significant harm by violating the Commonwealth Plan and the CAA.

28. Venue is proper in this District under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the claims occurred, and continue to occur, in this District. Venue is also proper in this District under 48 U.S.C. § 2167 and section 411 of the CAA.

## BACKGROUND

**A. AFSCME's early support of the Commonwealth Plan led to the Plan's confirmation and was based on AFSCME's right to share in the Commonwealth's excess cash surplus.**

29. Prior to the enactment of PROMESA, the Commonwealth was saddled with an unstainable debt burden of more than $70 billion, had more than $55 billion in unfunded pension liabilities, and no conceivable ability to restructure its liabilities or stabilize its financial situation.

7

As a result, the Commonwealth lost all access to the capital markets.  In response, Congress enacted PROMESA in 2016 and created the Oversight Board, an entity charged with achieving fiscal responsibility for the Commonwealth and regaining the Commonwealth's access to capital markets.

30.     In 2017, the Oversight Board initiated proceedings in this Court under Title III of PROMESA in an effort to find a path forward for the Commonwealth, its citizens, and other stakeholders, including AFSCME and the AFSCME/SPU Represented Employees.  While the Title III cases were pending, the Commonwealth endured hurricanes, earthquakes, and the COVID-19 pandemic, all of which made day to day life far more difficult for the residents of Puerto Rico and exacerbated the Commonwealth's already unprecedented financial difficulties.  These circumstances made the Title III cases all the more challenging and threatened the parties' ability to resolve them in a manner that would achieve PROMESA's lofty goals of restoring the Commonwealth to a position of fiscal responsibility and ensuring its future access to capital markets.

31.     The Commonwealth and all relevant stakeholders, including AFSCME, worked together to navigate these mounting burdens.  And, on January 18, 2022, this Court entered (a) *Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*, and (b) the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public*

*Buildings Authority* (the "Confirmation Order") (Docket No. 19813 in Case No. 17-03289-LTS), confirming the Commonwealth Plan for the Commonwealth and its people.

32. The Commonwealth Plan required extraordinary work over the course of several years to negotiate the various plan support agreements and resolve disputes arising throughout the pendency of the Title III cases.

33. AFSCME was the very first party to support the Commonwealth Plan and the only labor organization to ever do so.

34. AFSCME's early support of the Commonwealth Plan served as a catalyst for settlements by other stakeholders and eventually led to the Confirmation Order.

35. In an Opinion piece published in the Washington Post on October 4, 2019, David Skeel, a member of the Oversight Board, detailed the important role Puerto Rico's public employee unions and retirees, including AFSCME, played in the successful restructuring of the Commonwealth's debt. As Professor Skeel described, "[t]he union deal" – i.e., AFSCME's early support of the Commonwealth Plan – was "essential to Puerto Rico's emergence from bankruptcy." David Skeel, Finally, Puerto Rico has a way out of its debt crisis, Washington Post (Oct. 4, 2019).

36. One of several key benefits AFSCME successfully negotiated for in exchange for its support of the Commonwealth Plan was the right for the AFSCME/SPU Represented Employees to share in the Commonwealth's excess cash surplus.

37. The AFSCME/SPU Represented Employees would only receive a bonus in excess of the AFSCME/SPU Minimum Share if the Commonwealth outperformed the Commonwealth Plan in the first five Fiscal Years. Accordingly, the AFSCME/SPU Represented Employees were (and remain) incentivized to ensure that the Commonwealth is operating efficiently and that it does

not fall into the same patterns that culminated in the Commonwealth losing access to capital markets, the enactment of PROMESA, and the commencement of the Title III cases.

38. Section 56.1 of the Commonwealth Plan provides for the treatment of the AFSCME claims.

39. Section 56.1(b) of the Commonwealth Plan provides: "On or as soon as reasonably practicable after the Effective Date, AFSCME and its member employees, as applicable, shall receive the additional payments and distributions as set forth on Appendix II to Exhibit 'G' [of the Commonwealth Plan]."

40. Appendix II to Exhibit "G" includes a summary of proposed indicative terms for the "AFSCME Upside Fiscal Plan Surplus Sharing Agreement."  Appendix II to Exhibit "G" is annexed hereto as **Exhibit 2**.

41. As relevant to this action, the terms set forth in Appendix II to Exhibit "G" expressly define "cash basis" to mean that the "Fiscal Plan surplus calculation will use recorded income and expenses *as received or paid*."  (Emphasis added.) This definition of "cash basis" is consistent with the definition found in *Governmental Accounting, Auditing, and Financial Reporting* (2012) published by the Government Finance Officers Association (GFOA) which defines it as a "basis of accounting that recognizes transactions or events when related cash amounts are received or disbursed."

42. Accordingly, under the terms of the Commonwealth Plan, in calculating the Commonwealth's excess cash surplus for purposes of determining the AFSCME/SPU Represented Employees' share of that surplus, a cash basis calculation must be used based on recorded income and expenses as received or paid.

10

43.     The use of a cash basis method to calculate the Fiscal Plan surplus (as described in Appendix II to Exhibit "G" of the Commonwealth Plan) was a critical benefit AFSCME negotiated for in exchange for providing its support to the Commonwealth Plan.  The agreement to use a cash basis methodology also simplifies the excess cash calculation and was intended, in part, to avoid disputes over the interpretation of whether income or expenses are considered as "accrued" using other accounting methodologies.

**B.      The calculation of the Fiscal Plan surplus under the CAA.**

44.     Following the entry of the Confirmation Order, the Commonwealth and the Calculation Agent with AFSCME (as limited joinder party) executed the CAA.

45.     AFSCME joined the CAA "solely for the limited purpose of (a) agreeing to appoint the AFSCME Representative, (b) agreeing to the calculation methodology set forth on Schedules 1 and 4 of the [CAA]; and (c) agreeing to the provisions of Section 102(c) of the [CAA] relating to the appointment of AlixPartners, LLP as Calculation Agent, and Section 205 of the [CAA] relating to any challenge to the determinations and calculations made by the Calculation Agent."

46.     Section 103(d) of the CAA provides that the Excess TSA Cash Surplus and the Excess Cash Amount must be calculated "on a ***cash basis*** using recorded income and expenses ***as received or paid***."  (Emphasis added.)

47.     As detailed on Schedule 1 of the CAA ("Calculation of Projected Fiscal Plan TSA Cash Surplus"), the TSA is a pooled account structure maintained at the Puerto Rico Department of Treasury.  The TSA receives all general fund collections and makes all general fund disbursements on behalf of specific central government agencies, including general fund appropriations to component units and other entities that operate outside of the TSA.  The TSA Liquidity Plan is a cash translation of the Fiscal Plan for the Commonwealth of Puerto Rico (the "Commonwealth Fiscal Plan").  Because the Commonwealth is unable to deliver audited financial

statements in a timely fashion, the Commonwealth has been publishing weekly TSA cash flow data on a regular basis since October 2017, and stakeholders have come to understand the TSA Liquidity Plan as the best proxy for measuring the Commonwealth's financial performance on a real time basis. As noted on Schedule 1 of the CAA, "[g]iven the reliability, timeliness, and consistency of the TSA cash flow reporting, it has been determined to be the best metric for measuring outperformance relative to the fiscal plan." However, some income and expenses are reflected in the TSA but not included in the Commonwealth Fiscal Plan, and, conversely, some income and expenses included in the Commonwealth Fiscal Plan are not reflected in the TSA. Accordingly, the TSA cash flow data must be adjusted to calculate the Upside Bonus Share to be consistent with the Commonwealth Fiscal Plan and comply with the Commonwealth Plan that includes the agreement between AFSCME and the Oversight Board. Under the Commonwealth Plan and the CAA, no other manipulation to the TSA was intended or permitted.

48. Under section 203(b) of the CAA, on or before each Share Payment Date, the Commonwealth must pay, or cause to be paid, "an amount equal to the Upside Bonus Share to all eligible employees in accordance with the Commonwealth Plan (including the payment of the AFSCME/SPU Share to the AFSCME/SPU Represented Employees)."

49. For each Fiscal Year, the AFSCME/SPU Share must be "an amount equal to 27 percent (27%) of the Upside Bonus Share," and the Upside Bonus Share is "an amount equal to twenty-five percent (25%) of the Excess Cash Amount." CAA § 101, Definitions ("AFSCME/SPU Share"). The AFSCME/SPU Share is payable annually to AFSCME/SPU Represented Employees. The CAA also provides that the AFSCME/SPU Share cannot be less than the AFSCME/SPU Minimum Share, or $2,000 per AFSCME/SPU Represented Employee as of the end of any given

12

Fiscal Year regardless of the amount of the Upside Bonus Share for such Fiscal Year. CAA § 101, Definitions.

50. Under the terms of the CAA, "Excess Cash Amount" "means for any Fiscal Year, the Excess TSA Cash Surplus, provided, however, that if the Excess TSA Cash Surplus is less than One Hundred Million Dollars ($100,000,000), the Excess Cash Amount shall be zero." *Id.*

51. The CAA further defines "Excess TSA Cash Surplus" to mean "for any Fiscal Year, the amount by which the TSA Cash Surplus in such Fiscal Year, if any, exceeds the Projected Fiscal Plan TSA Surplus for such Fiscal Year." *Id.*

52. Furthermore, the CAA makes clear that "TSA Cash Surplus" "means for each Fiscal Year, the amount by which TSA cash inflows exceed TSA cash outflows, as reported on the 'Net Operating Cash Flow' line of the Treasury Single Account (TSA) Cash Flow Report by AAFAF for such Fiscal Year as adjusted by the Annual Adjustments." *Id.*

53. Under the CAA, the Calculation Agent is charged with the responsibility of, among other things, determining "whether (i) a TSA Cash Surplus Exists, and, if so, the amount thereof, (ii) an Excess TSA Cash Surplus exists, and if so, the amount thereof, [and] (iii) an Excess Cash Amount exists, and if so, the amount thereof." CAA § 202(h). The Calculation Agent must also determine (i) the amount of the Upside Bonus Share (including the AFSCME/SPU Share or AFSCME/SPU Minimum Share, as applicable) and (ii) all other amounts necessary to complete a final calculation of the Upside Bonus Share in accordance with Schedule 4 [to the CAA]." *Id.* § 202(i).

54. Section 103(e) of the CAA provides that, "[i]n the event of any inconsistency between [the CAA] and the Commonwealth Plan, the Commonwealth Plan shall govern."

13

**C.** **The Commonwealth, the Oversight Board, and the Calculation Agent flout their obligation to calculate the AFSCME/SPU Share using a cash basis by deducting more than $2 billion dollars for alleged expenses in the 2024 Fiscal Year that were not paid.**

55. On September 27, 2024, AFSCME received the AFSCME Calculation Report for the 2024 Fiscal Year from the Calculation Agent, which contained the Calculation Agent's purported calculation of the AFSCME/SPU Share for the 2024 Fiscal Year. The AFSCME Calculation Report AFSCME received from the Calculation Agent for the 2024 Fiscal Year is annexed hereto as **Exhibit 3**.

56. According to the AFSCME Calculation Report AFSCME received from the Calculation Agent, the AFSCME/SPU Share for the 2024 Fiscal Year was only $7,720,671. Based on the anticipated number of AFSCME/SPU Represented Employees for the 2024 Fiscal Year, each AFSCME/SPU Represented Employee would have received a bonus payment of less than $2,000 and, accordingly, their bonus for the 2024 Fiscal Year would be limited to the AFSCME/SPU Minimum Share, or $2,000 per AFSCME/SPU Represented Employee—an amount that appeared to be woefully short of what AFSCME calculated the AFSCME/SPU Minimum Share to total.

57. AFSCME timely challenged the AFSCME Calculation Report in accordance with the procedures set forth in Section 205 of the CAA.

58. Specifically, AFSCME challenged the AFSCME Calculation Report because it mischaracterized significant amounts as expenses and thus substantially reduced the TSA Cash Surplus, the Excess TSA Cash Surplus, and the Excess Cash Amount, all of which are used in calculating the AFSCME/SPU Share.

59. Indeed, *more than $2 billion* ($2,257,615,984 in total) was deducted from the TSA Cash Surplus even though that amount had *not* actually been paid during the 2024 Fiscal Year. Using the cash basis calculation required by the Commonwealth Plan and the CAA, the

14

$2,257,615,984 should *not* have been deducted, and the calculations of the TSA Cash Surplus, the Excess TSA Cash Surplus, the Excess Cash Amount, and the AFSCME/SPU Share should have been orders of magnitude larger as a result.

60. If the proper cash basis calculation (i.e., a calculation that did not deduct the $2,257,615,984 in unpaid funds) had been used, the AFSCME/SPU Share would have been at least $160,109,750. And, based on the anticipated number of AFSCME/SPU Represented Employees for the 2024 Fiscal Year, each AFSCME/SPU Represented Employee should have received a bonus payment for the 2024 Fiscal Year in excess of $17,000.

61. In an attempt to justify their efforts to shield more than $2 billion from inclusion in the calculation of the Excess TSA Cash Surplus and the Excess Cash Amount, the Oversight Board claimed that the $2,257,615,984 was properly deducted from the TSA Cash Surplus for the 2024 Fiscal Year as Annual Adjustments for Working Capital Related and Other Adjustments.

62. But, under the terms of the CAA, Working Capital Related and Other Adjustments are limited to "adjustments made on account of temporary variances, both positive and negative, that are expected to reverse in the future." Examples of such adjustments include but are not limited to "(1) fund extensions from prior fiscal years and the related disbursements, (2) changes in accrued expenses, payables, and other balance sheet related activities, (3) changes in the TSA Sweep Account balance and (4) extensions, deferrals, or temporary holidays related to tax return filing and/or tax payment deadlines."

63. Moreover, under the Commonwealth Plan, the Fiscal Plan surplus calculation must use recorded income and expenses as received or paid, and, under the CAA, the Excess TSA Cash Surplus and the Excess Cash Amount calculations must likewise be made using recorded income and expenses as received or paid. The Oversight Board's ability under the CAA to include Annual

15

Adjustments for Working Capital Related and Other Adjustments does ***not*** (and could not) override the requirement to use a cash basis calculation.

64. In short, the $2,257,615,984 of disputed deductions are not temporary variances that are expected to reverse in the future.

65. The $2,257,615,984 of disputed deductions are instead and actually purported fund extensions approved during the 2024 Fiscal Year for future year expenses that cannot properly be deducted from the Fiscal Plan surplus calculation for the 2024 Fiscal Year.

66. At all relevant times during the 2024 Fiscal Year, the $2,257,615,984 of disputed deductions remained as excess cash in the TSA unless and until they were actually paid by the Commonwealth for a purpose authorized by the Oversight Board.

67. The $2,257,615,984 of disputed deductions were set aside for potential future use by the Commonwealth in an effort to avoid characterizing those otherwise available funds as TSA Cash Surplus and thus part of the Excess TSA Cash Surplus and Excess Cash Amount.

68. The $2,257,615,984 of disputed deductions were ***not*** paid in the 2024 Fiscal Year.

69. As of June 30, 2024, the $2,257,615,984 of disputed deductions were, in fact, treated as excess cash by the Commonwealth and the Oversight Board. At all times, those funds remained available to be reprogramed for other purposes and were still available for the Commonwealth to spend.

70. For example, more than $211 million of fund extensions were deducted from the calculations of TSA Cash Surplus, Excess TSA Cash Surplus, and the Excess Cash Amount, allegedly for employee related costs. The Commonwealth did not spend any of these earmarked amounts during the 2024 Fiscal Year (on employee related costs or otherwise).

16

71.　　Similarly, $150 million was deducted from the calculations of TSA Cash Surplus, Excess TSA Cash Surplus, and the Excess Cash Amount as a supplemental appropriation for a "spending reserve for current liabilities."  The supplemental appropriation was approved on June 24, 2024, a mere six days before the 2024 Fiscal Year ended.  Neither the Commonwealth nor the Oversight Board has identified any liabilities subject to the appropriation nor have they identified a legal basis for the incurrence of liabilities in excess of then-existing appropriations.  Indeed, in support of this deduction, the Oversight Board provided AFSCME with a budget resolution drafted by the Commonwealth.  In the draft, less than $12 million was requested for the supplemental appropriation for current liabilities.  The Oversight Board never explained why the appropriation was unilaterally increased by more than $135 million.  More to the point, as of June 30, 2024, the end of the 2024 Fiscal Year, the entirety of the $150 million remained unspent and thus should have been included in the calculation of TSA Cash Surplus, Excess TSA Cash Surplus, and the Excess Cash Amount.

72.　　The foregoing paragraphs are but a few select examples of the ways in which Defendants violated the terms of the Commonwealth Plan and the CAA by failing to use a cash basis calculation.  The entirety of the $2,257,615,984 in deductions for Working Capital Related and Other Adjustments remained unspent as of June 30, 2024, the end of the 2024 Fiscal Year.

73.　　Upon information and belief, the Oversight Board has no intention of authorizing the Commonwealth to actually spend an additional $2,257,615,984.  Indeed, doing so would be contrary to the Oversight Board's mandate to ensure that the Commonwealth achieve fiscal responsibility and access to the capital markets because authorizing the Commonwealth to spend an additional $2,257,615,984 would not be fiscally responsible and would threaten the Commonwealth's ability to access the capital markets.

17

74. Accordingly, the $2,257,615,984 in deductions for Working Capital Related and Other Adjustments should not have been removed from the TSA Cash Surplus and instead should have been included by the Calculation Agent in calculating the Excess TSA Cash Surplus and the Excess Cash Amount for the 2024 Fiscal Year.

75. The correct calculation of the AFSCME/SPU Share for the 2024 Fiscal Year required by the Commonwealth Plan and the CAA is:

Schedule 4 - Calculation of AFSCME/SPU Share

| | Description | Reference | Amount |
|---|---|---|---|
| 1.) | Net Cash Flow (per AAFAF TSA cash flow report) | a | 1,775,765,002 |
| 2.) | **Annual Adjustments:** | | |
| 3.) | POA Disbursements Adjustments (as defined herein) | | 213,222,896 |
| 4.) | Other POA Timing Adjustments (as defined herein) | | (29,437,034) |
| 5.) | Rainy Day Fund Reserve Adjustment (as defined herein) | | (130,000,000) |
| 6.) | Federal Fund Surplus/Deficit Adjustment (as defined herein) | | (2,836,117) |
| 7.) | Sweep Account Balance Adjustment (as defined herein) | | 13,319,130 |
| 8.) | Working Capital Related and Other Adjustments (as defined herein) | | 637,766,507 |
| 9.) | **Subtotal Annual Adjustments** | b | 702,035,382 |
| 10.) | **TSA Cash Surplus (as defined herein)** | c = a + b | 2,477,800,384 |
| 11.) | Projected Fiscal Plan TSA Cash Surplus, post debt-service (per row 40 of Exhibit 1) | d | 105,804,090 |
| 12.) | **Excess TSA Cash Surplus (as defined herein)** | e = max of c - d and | 2,371,996,294 |
| | | If e < $100m, f = 0, if | |
| 13.) | **Excess Cash Amount** | >= $100m f = e | 2,371,996,294 |
| 14.) | Twenty Five Percent | g | 25% |
| 15.) | **Upside Bonus Share (as defined herein)** | h = f x g | 592,999,074 |
| 16.) | Twenty Seven Percent | i | 27% |
| 17.) | **AFSCME/SPU Share (as defined herein)** | j = h x i | 160,109,750 |

Notes:
1) Line 15 has been edited and lines 16 and 17 have been added to make Schedule 4 correspond to the defined terms in the Fiscal Plan Surplus Sharing Calculation Agent Agreement.

**D.     The Commonwealth and the Calculation Agent were unable to resolve AFSCME's challenge to the AFSCME Calculation Report.**

76. After AFSCME challenged the AFSCME Calculation Report, representatives of AFSCME, the Commonwealth, the Oversight Board, and the Calculation Agent met virtually in an attempt to resolve AFSCME's challenges.

77. AFSCME, the Commonwealth, the Oversight Board, and the Calculation Agent were unable to resolve AFSCME's challenges.

78. No representative of the Commonwealth, the Oversight Board, or the Calculation Agent claimed that the $2,257,615,984 of disputed deductions were actually paid or spent prior to June 30, 2024.

79. Even though the entirety of the $2,257,615,984 of disputed deductions were ***not*** paid prior to June 30, 2024, the Calculation Agent refused to revise its calculation of the AFSCME/SPU Share for the 2024 Fiscal Year to remove those deductions from the TSA Cash Surplus, the Excess TSA Cash Surplus, and the Excess Cash Amount.

80. The Calculation Agent has taken the position that, because the definition of "Working Capital Related and Other Adjustments" in the CAA states that "[s]uch adjustments shall be provided by the Oversight Board (for as long as it is in existence) and will subsequently be provided by the Commonwealth," the Calculation Agent lacks authority to modify the Working Capital Related and Other Adjustments to comply with the requirement – set forth in the Commonwealth Plan and the CAA itself – that all relevant calculations be on a cash basis using recorded income and expenses as received or paid.

81. But the Oversight Board does not have the unfettered authority under the CAA or otherwise to violate the terms of the Commonwealth Plan and/or the CAA itself.

82. And the Calculation Agent likewise lacks the authority under the CAA or otherwise to violate the terms of the Commonwealth Plan and/or the CAA.

83. In practical effect, the Calculation Agent, the Commonwealth, and the Oversight Board have conspired to convert the calculations from a cash basis (as required by the Commonwealth Plan and the CAA) to some other arbitrarily created basis. The $2,257,615,984 of disputed deductions are in effect set asides for potential liabilities that may or may not be paid in future Fiscal Years.

19

84. The vast majority of the fund extensions will expire without any of the funds actually being paid.

85. In fact, from June 2024 through September 2024, more than $379 million of the $2,257,615,984 of disputed deductions already expired and no transactions can or will be recorded against those amounts.

86. The Commonwealth, the Oversight Board, and the Calculation Agent lack any basis under the Commonwealth Plan, the CAA, or otherwise to reduce the TSA Cash Surplus, the Excess TSA Cash Surplus, and the Excess Cash Amount by $2,257,615,984 for fund extensions that were not paid by the end of the 2024 Fiscal Year.

87. The Calculation Agent and the Oversight Board violated the terms of the CAA by failing to calculate the AFSCME/SPU Share using a cash basis calculation based on recorded income and expenses as received or paid.

88. Section 205(e) of the CAA authorizes AFSCME to bring an action in this Court seeking specific performance of any relevant provisions of the CAA and the Commonwealth Plan.

89. Section 205(g) of the CAA provides that AFSCME "shall be reimbursed reasonable fees for its professionals if it substantially prevails in any dispute."

90. AFSCME certifies that, prior to filing this action, it used its best efforts to resolve informally the matters raised herein.

## **COUNT I**

### **Violation of the Commonwealth Plan and the Confirmation Order**
### **(Against All Defendants)**

91. AFSCME repeats and realleges all of the prior paragraphs of this Complaint as if fully set forth herein.

20

92.     This Court confirmed the Commonwealth Plan in the Confirmation Order pursuant to section 314(b) of PROMESA.

93.     The Commonwealth Plan was incorporated by reference into and formed an integral part of the Confirmation Order.

94.     The Confirmation Order is a final order of this Court, intended to be binding on all parties in interest, including the Commonwealth, the Oversight Board, and the Calculation Agent.

95.     The Commonwealth Plan provided for the treatment of the AFSCME Claims.

96.     Under section 56.1(b) of the Commonwealth Plan, "AFSCME and its member employees, as applicable, shall receive the additional payments and distributions as set forth on Appendix II to Exhibit 'G' [of the Commonwealth Plan]."

97.     Appendix II to Exhibit "G" of the Commonwealth Plan contains a summary of proposed indicative terms for AFSCME Upside Fiscal Plan Surplus Sharing Agreement.

98.     Appendix II to Exhibit "G" of the Commonwealth Plan provides that "Fiscal Plan surplus calculation will use recorded income and expenses as received or paid," i.e., a "Cash Basis" calculation.

99.     For the 2024 Fiscal Year, Defendants did not calculate the Fiscal Plan surplus due AFSCME and its members using a cash basis calculation of recorded income and expenses as received or paid.

100.    Accordingly, Defendants violated the Commonwealth Plan and the Confirmation Order.

101.    A clear, present, and justiciable controversy exists with respect to Defendants' obligations to comply with the Commonwealth Plan and the Confirmation Order by calculating

21

the Fiscal Plan surplus due AFSCME and its members using a cash basis calculation of recorded income and expenses as received or paid.

102. AFSCME is entitled to a declaration that Defendants are required under the Commonwealth Plan and the Confirmation Order to calculate the Fiscal Plan surplus due AFSCME and its members using a cash basis calculation of recorded income and expenses as received or paid.

103. The Commonwealth, the Oversight Board, the Secretary of Treasury, AAFAF, and the Executive Director are the entities and officials responsible for (a) ensuring compliance with the Commonwealth Plan and the Confirmation Order; and (b) implementing any obligations of the Commonwealth to distribute to AFSCME's eligible members the Fiscal Plan surplus due them under the Commonwealth Plan and the Confirmation Order.

104. AFSCME is entitled to an injunction or order requiring Defendants to comply with the Commonwealth Plan and the Confirmation Order by compelling them to (a) revise the Fiscal Plan surplus calculation using a cash basis calculation method – i.e., by using recorded income and expenses as received or paid; and (b) distribute to AFSCME's eligible members the Fiscal Plan surplus due them under the Commonwealth Plan and the Confirmation Order plus interest.

105. Alternatively, if specific performance of the Commonwealth Plan and the Confirmation Order is not ordered, AFSCME is entitled to damages from the Commonwealth on behalf of its members, in an amount to be determined, but in no event less than $160,109,750 plus interest (such amount to be distributed to the AFSCME/SPU Represented Employees).

## COUNT II

### Specific Performance of the CAA
### (Against All Defendants)

106. AFSCME repeats and realleges all of the prior paragraphs of this Complaint as if fully set forth herein.

107. The CAA is a binding agreement between the Commonwealth and the Calculation Agent with AFSCME (as limited joinder party).

108. Under the CAA, the AFSCME/SPU Represented Employees were entitled to the AFSCME/SPU Share for the 2024 Fiscal Year.

109. Under the CAA, the AFSCME/SPU Share for the 2024 Fiscal Year is an amount equal to 27% of the Upside Bonus Share.

110. Under the CAA, the Upside Bonus Share for the 2024 Fiscal Year is an amount equal to 25% of the Excess Cash Amount.

111. Under the CAA, the Excess Cash Amount for the 2024 Fiscal Year is the Excess TSA Cash Surplus, provided, however, that if the Excess TSA Cash Surplus is less than $100 million, the Excess Cash Amount shall be zero.

112. Under the CAA, the Excess TSA Cash Surplus for the 2024 Fiscal Year is the amount by which the TSA Cash Surplus, if any, exceeds the Projected Fiscal Plan TSA Surplus for the 2024 Fiscal Year.

113. Under the CAA, the TSA Cash Surplus for the 2024 Fiscal Year is the amount by which TSA cash inflows exceed TSA cash outflows, as reported on the "Net Operating Cash Flow" line of the Treasury Single Account (TSA) Cash Flow Report by AAFAF for such Fiscal Year as adjusted by the Annual Adjustments.

23

114.    Annual Adjustments include Working Capital Related and Other Adjustments, which, for the 2024 Fiscal Year, were provided by the Oversight Board.

115.    Under the CAA, the Excess TSA Cash Surplus and the Excess Cash Amount for the 2024 Fiscal Year were required to be calculated on a cash basis using recorded income and expenses as received or paid.

116.    Under the Commonwealth Plan, the Fiscal Plan surplus calculation was required to be calculated on a cash basis using recorded income and expenses as received or paid.

117.    Under the CAA, in the event of any inconsistency between the CAA and the Commonwealth Plan, the Commonwealth Plan shall govern.

118.    For the 2024 Fiscal Year, the Oversight Board provided $2,257,615,984 of negative Working Capital Related and Other Adjustments that were *not* calculated on a cash basis using recorded expenses as paid.

119.    The $2,257,615,984 of negative Working Capital Related and Other Adjustments provided by the Oversight Board were not paid in the 2024 Fiscal Year.

120.    For the 2024 Fiscal Year, the Calculation Agent did not calculate the Excess TSA Cash Surplus or the Excess Cash Amount on a cash basis using recorded income and expenses as received or paid.

121.    In the AFSCME Calculation Report for the 2024 Fiscal Year, the Calculation Agent incorrectly calculated the AFSCME/SPU Share as $7,720,671.

122.    For the 2024 Fiscal Year, the AFSCUME/SPU Share should have been at least $160,109,750.

123.    Accordingly, the Calculation Agent understated the AFSCME/SPU Share by at least $152,389,079.

24

124. AFSCME timely challenged the AFSCME Calculation Report for the 2024 Fiscal Year.

125. The Calculation Agent, the Commonwealth, and AFSCME were unable to resolve AFSCME's challenge to the AFSCME Calculation Report for the 2024 Fiscal Year.

126. Under section 205(e) of the CAA, AFSCME has the right to bring an action in this Court to seek specific performance of any relevant provision of the CAA and the Commonwealth Plan.

127. A clear, present, and justiciable controversy exists with respect to Defendants' obligations to comply with the CAA and the Commonwealth Plan by calculating the AFSCME/SPU Share using a cash basis calculation of recorded income and expenses as received or paid.

128. AFSCME is entitled to a declaration that Defendants are required under the CAA to calculate the AFSCME/SPU Share using a cash basis calculation of recorded income and expenses as received or paid.

129. The Commonwealth, the Oversight Board, the Secretary of Treasury, AAFAF, the Executive Director, and the Calculation Agent are the entities and officials responsible for (a) ensuring compliance with the CAA and the Commonwealth Plan; and (b) implementing any obligations of the Commonwealth to distribute to the AFSCME/SPU Represented Employees the AFSCME/SPU Share due under the CAA and the Commonwealth Plan and the Confirmation Order.

130. AFSCME is entitled to specific performance of the CAA and the Commonwealth Plan.

25

131.     Under a proper cash basis calculation, for the 2024 Fiscal Year, the AFSME/SPU Share would be no less than $160,109,750 plus interest.

132.     Alternatively, if specific performance of the CAA and the Commonwealth Plan is not ordered, AFSCME is entitled to damages from the Commonwealth on behalf of the AFSCME/SPU Represented Employees, in an amount to be determined, but in no event less than $160,109,750 plus interest (such amount to be distributed to the AFSCME/SPU Represented Employees).

**PRAYER FOR RELIEF**

**WHEREFORE**, AFSCME respectfully requests that this Court:

(a) Declare that Defendants violated the Commonwealth Plan, the Confirmation Order, and/or the CAA;

(b) On Count I, enter an injunction or Order requiring specific performance of the Commonwealth Plan by compelling Defendants to recalculate the Fiscal Plan surplus calculation due AFSCME's members for the 2024 Fiscal Year by using a cash basis calculation method (i.e., an amount no less than $160,109,750) and to thereafter distribute to AFSCME's members the correct amounts due them under the Commonwealth Plan;

(c) On Count II, enter an injunction or Order requiring specific performance of the CAA and the Commonwealth Plan by compelling Defendants to recalculate the AFSCME/SPU Share for the 2024 Fiscal Year using a cash basis calculation method (i.e., an amount no less than $160,109,750) and to thereafter distribute to the AFSCME/SPU Represented Employees the correct amounts due them under the CAA and the Commonwealth Plan;

(d) Alternatively, only if specific performance is not ordered on Count I and/or Count II, award AFSCME damages from the Commonwealth in an amount to be determined, but in no

event less than $160,109,750 (such amount to be distributed to the AFSCME/SPU Represented Employees);

(e) Award AFSCME reasonable fees for its professionals under section 204(g) of the CAA;

(f) Award AFSCME pre- and post-judgment interest (such interest to be distributed to the AFSCME/SPU Represented Employees);

(g) Award AFSCME its other costs, expenses, and fees; and

(h) Award AFSCME such other costs and relief deemed just and proper.

Dated: January 28, 2025

By: /s/ *Alejandro Bellver Espinosa*
Alejandro Bellver Espinosa
BELLVER ESPINOSA LAW FIRM
Cond. San Martín 1605 Av. Ponce de León, Suite #300
San Juan, Puerto Rico 00918
Tel.: (787) 946-5268
alejandro@bellverlaw.com

By: /s/ *Michael L. Artz*
Michael L. Artz**
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES
1101 17th Street NW, Suite 900
Washington, DC 20011
Tel.: (202) 775-5900
martz@afscme.org

By: /s/ *Claude G. Szyfer*
Claude G. Szyfer*
Patrick N. Petrocelli*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Tel.: (212) 918-3000
claude.szyfer@hoganlovells.com
patrick.petrocelli@hoganlovells.com

*Co-Counsel for Plaintiff American Federation of State, County and Municipal Employees*

*Motion for *pro hac vice* admission forthcoming

**Admitted *pro hac vice*

27