# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>Debtors[1] | PROMESA Title III<br><br>No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES<br><br>Plaintiff,<br><br>v.<br><br>THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; HON. ANGEL PANTOJA-RODRÍGUEZ, in his official capacity as Secretary of the Puerto Rico Department of Treasury; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; HON. FRANCISCO J. DOMÉNECH FERNÁNDEZ, in his official capacity as Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority; and ALIXPARTNERS, LLP,<br><br>Defendants. | PROMESA Title III<br><br>Adv. Proc. No. 25-00004-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (v) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations). On October 30, 2024, the Title III case for the Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) was closed.

**NOTICE OF ALIXPARTNERS, LLP'S MOTION TO DISMISS
THE ADVERSARY COMPLAINT**

**PLEASE TAKE NOTICE** that AlixPartners, LLP ("Calculation Agent" or
"AlixPartners") is filing herewith *AlixPartners, LLP's Memorandum of Law in Support of its
Motion to Dismiss the Adversary Complaint* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-
1(c), Plaintiff's response to the Motion, if any, must be filed on or before **April 29, 2025**. If no
objection or other response is filed within the time allowed pursuant to Local Bankruptcy Rule
9013-1(c), the Motion will be deemed unopposed and may be granted unless: (i) the requested
relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of
the court, the interest of justice requires otherwise.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Paragraph 2.a of the *Third
Amended Standing Order*, dated December 19, 2023 [ECF No. 25936-1 in Case No. 17-3283],
counsel for AlixPartners and counsel for Plaintiff conferred (including an exchange of letters and
a telephonic meeting) and agree that the meet and confer requirements have been satisfied. Despite
the parties' best efforts, the parties were unable to informally resolve the matters in controversy,
necessitating the filing of the Motion. Plaintiffs have not amended the Adversary Complaint.

Dated: April 15, 2025

**ADSUAR**

*/s/ Eric Pérez-Ochoa*
Eric Pérez-Ochoa, Esq.
USDC-PR No. 206314
epo@amgprlaw.com

*/s/ Luis A. Oliver-Fraticelli*
Luis A. Oliver-Fraticelli, Esq.
USDC-PR No. 209204

loliver@amgprlaw.com

PO Box 70294
San Juan, Puerto Rico 00936-8294
Telephone: (787) 281-1813

**WOLLMUTH MAHER & DEUTSCH LLP**

Paul R. DeFilippo, Esq. (*pro hac vice* pending)
Lyndon M. Tretter, Esq. (*pro hac vice* pending)
Joseph F. Pacelli, Esq. (*pro hac vice* pending)
Nicholas A. Servider, Esq. (*pro hac vice* pending)
500 Fifth Avenue
New York, NY 10110
Phone: 212-382-3300
pdefilippo@wmd-law.com
ltretter@wmd-law.com
jpacelli@wmd-law.com
nservider@wmd-law.com

*Counsel to Defendant AlixPartners, LLP*

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>              Debtors[1] | PROMESA Title III<br><br>No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES<br><br>    Plaintiff,<br><br>v.<br><br>THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; HON. ANGEL PANTOJA-RODRÍGUEZ, in his official capacity as Secretary of the Puerto Rico Department of Treasury; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; HON. FRANCISCO J. DOMÉNECH FERNÁNDEZ, in his official | PROMESA Title III<br><br>Adv. Proc. No. 25-00004-LTS |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (v) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations). On October 30, 2024, the Title III case for the Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) was closed.

capacity as Executive Director of the Puerto Rico
Fiscal Agency and Financial Advisory Authority;
and ALIXPARTNERS, LLP,

     Defendants.

**ALIXPARTNERS, LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS THE ADVERSARY COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ....................................................................................................................3

   I.    The Commonwealth Plan and Confirmation Order ..............................................3

   II.    The CAA ................................................................................................................4

   III.    The AFSCME/SPU Share Calculation Dispute ...................................................6

STANDARD OF REVIEW .......................................................................................................7

ARGUMENT .........................................................................................................................9

   I.    THE ADVERSARY COMPLAINT FAILS TO STATE A JUSTICIABLE
       CONTROVERSY BETWEEN PLAINTIFF AND ALIXPARTNER ................................9

      A.  As A Matter of Law, Plaintiff Cannot Sue AlixPartners for Ministerial
         Application of Calculation Inputs Over Which Other Defendants Had Sole
         Authority ........................................................................................................9

      B.  Other Sections of the CAA Confirm That Any Claim Against AlixPartners is
         Premature Pending the Outcome of This Proceeding ...........................................10

   II.    ALIXPARTNERS JOINS IN THE MOTIONS TO DISMISS OF THE OTHER
       DEFENDANTS ...................................................................................................12

     CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITES

Page(s)

<u>CASES</u>

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 8

*Brooks v. AIG SunAmerica Life Assur. Co.*,
480 F.3d 579 (1st Cir. 2007)....................................................................................... 8

*Brown v. N. Carolina State Bd. of Elections*,
394 F. Supp. 359 (W.D.N.C. 1975)........................................................................... 10

*Curley v. Mobil Oil Corp.*,
860 F.2d 1129 (1st Cir. 1988).................................................................................... 13

*Gonzalez-Camacho v. Banco Popular de Puerto Rico*,
318 F. Supp. 3d 461 (D.P.R. 2018),
*aff'd*, 2020 WL 5543934 (1st Cir. July 21, 2020)....................................................... 8

*In re Birriel Rivera*,
610 B.R. 174 (Bankr. D.P.R. 2019)............................................................................ 12

*In re Consol. Indus.*,
360 F.3d 712 (7th Cir. 2004) ..................................................................................... 12

*Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*,
523 F.3d 75 (1st Cir. 2008)......................................................................................... 8

*Mun. Claims Mgmt. Servs. Inc. v. Asociación de Residentes de Caminito Inc.*,
2023 WL 12030705 (D.P.R. Feb 14, 2023)............................................................... 11

*Next Step Medical v. Bromedicon*,
190 D.P.R. 474, 90 P.R. Offic. Trans. 34 (2014) ...................................................... 13

*Papasan v. Allain*,
478 U.S. 265 (1986) .................................................................................................... 8

*Reddy v. Foster*,
845 F.3d 493 (1st Cir. 2017)........................................................................................ 7

*Redondo Const., Co. v. Izquierdo*,
929 F. Supp. 2d 1 (D.P.R. 2012) ............................................................................... 13

*Roshinsky v. Taxicab Indus. Pension Fund*,
  2010 WL 335088 (W.D.N.Y. Jan. 22, 2010).............................................................. 10

*Russell v. Westchester Cmty. Coll.*,
  2017 WL 4326545 (S.D.N.Y. Sept. 27, 2017) .......................................................... 10

*Satellite Broadcasting Cable, Inc. v. Telefonica de España*,
  786 F. Supp. 1089 (D.P.R. 1992),
  *aff'd as modified*, 807 F. Supp. 210 (D.P.R. 1992).................................................. 12

*U.S. v. Santiago-Rodriguez*,
  993 F. Supp. 31 (D.P.R. 1998) .................................................................................. 13

*U.S. v. Saccoccia*,
  433 F.3d 19 (1st Cir. 2005)........................................................................................ 12

*Woods v. Wells Fargo Bank, N.A.*,
  733 F.3d 349 (1st Cir. 2013)...................................................................................... 12

RULES

Federal Rules of Civil Procedure 12(b)(6)............................................................... 1, 3, 8

**TO THE HONORABLE COURT:**

Defendant AlixPartners, LLP ("Calculation Agent" or "AlixPartners") respectfully submits this memorandum of law in support of its motion (the "Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the claims asserted against it in the adversary complaint (the "Adversary Complaint" or "Adv. Compl.") filed by the American Federation of State, County and Municipal Employees ("Plaintiff" or "AFSCME"). In support of this Motion, AlixPartners respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      The Adversary Complaint alleges the same two causes of action against all Defendants: (i) violation of the Commonwealth Plan and the Confirmation Order,[2] and (ii) specific performance of the Fiscal Plan Surplus Sharing Calculation Agreement (the "CAA"). AlixPartners joins in the other Defendants' motions to dismiss on grounds that apply equally to all,[3] but also moves separately because there is no justiciable controversy between Plaintiff and AlixPartners.

2.      Under the Plan and CAA, AlixPartners plays the ministerial role of making calculations based on inputs supplied by others, including, in this case, a figure for "Working Capital Related and Other Adjustments" (hereinafter "Working Capital"). Plaintiff claims that "the $2,257,615,984 in deductions for Working Capital . . . should not have been removed from the TSA Cash Surplus and instead should have been included by the Calculation Agent in calculating the Excess TSA Cash Surplus and the Excess Cash Amount for the 2024 Fiscal Year." Adv. Compl. ¶ 74.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed in the Adversary Complaint.

[3] We briefly summarize those common grounds for dismissal in Point II, *infra*. For example, "specific performance" is not a cause of action; it is a remedy.

3.      The fatal flaw in Plaintiff's claims against AlixPartners is that nowhere in the Adversary Complaint does Plaintiff even allege, let alone identify, any factual basis to show that AlixPartners had authority or discretion to change or reject the Working Capital input provided to it as Calculation Agent. Nor could Plaintiff. The CAA, which is exhibited to and incorporated by reference in the Adversary Complaint, plainly states that AlixPartners' calculations must be "based upon the information set forth in the Certified Fiscal Plan *and provided by the Commonwealth*[.]" CAA § 201(a) (emphasis added). The Certified Fiscal Plan is certified by the Oversight Board and is created by the Commonwealth, not AlixPartners.

4.      Other CAA provisions also bar Plaintiff's claims against AlixPartners. For instance, Section 205 of the CAA provides procedures for "challenges" to the calculation made by the Calculation Agent, including ultimately through a formal "proceeding" in this Court. The sole roles for AlixPartners in such challenges and this proceeding are (i) to determine by November 1st of the applicable year the "portion of the AFSCME/SPU share that is <u>not</u> in dispute," (ii) to make and circulate its "final calculations" on the figures then extant and (iii) "[u]pon the final resolution of any challenge or proceeding" to perform "[a] revised final calculation" and deliver it to the appropriate "Notice Parties" *Id*. at § 205(d)-(f) (underlining added). The CAA is clear that there can be no Event of Default while the Title III Court proceeding is in process and there is no contract obligation for the Calculation Agent to specifically perform until the proceeding is over. *Id*. at §§ 205(e), 301-302(b)

5.      AlixPartners does not dispute that *someday* it may be contractually bound under the CAA to render a revised calculation for Fiscal Year 2024. *i.e.*, if and when it is presented with new inputs through the challenge-proceeding process. And, to be clear, AlixPartners stands ready to perform such revised calculation if consistent with its obligations under the CAA. <u>But until this</u>

2

Court resolves this proceeding as between Plaintiff and the other Defendants, any claim by Plaintiff against AlixPartners regarding its performance as Calculation Agent is premature or unripe because there is nothing yet for AlixPartners to perform. Even then, AlixPartners has no liability under the CAA absent willful misconduct or gross negligence (CAA § 401(a), (c)), neither of which is alleged in the Adversary Complaint.

6.      In short, there is today no legally plausible or cognizable claim pled against AlixPartners. The Adversary Compliant cannot get around the plain CAA language and Fed. R. Civ. P. 12(b)(6) merely by arguing that, in *following* the CAA, AlixPartners' calculation implicitly "blessed" the Working Capital figure provided to it by the Commonwealth and its Oversight Board or that AlixPartners "[i]n effect . . . rewrote" the cash accounting methodology allegedly required by the Commonwealth Plan and Confirmation Order. Adv. Compl. ¶¶ 7-8. Without a factual basis to allege that AlixPartners had any discretion or responsibility over the Working Capital figure under the Plan, the Confirmation Order or the CAA, the Adversary Complaint against it must be dismissed.

## BACKGROUND

### I.      The Commonwealth Plan and Confirmation Order

7.      In 2016, Congress enacted PROMESA and created the Oversight Board, an entity charged with achieving fiscal responsibility for the Commonwealth. Adv. Compl. ¶ 29. In 2017, the Oversight Board initiated proceedings in this Court under Title III of PROMESA in an effort to find a path forward for the Commonwealth and other stakeholders, including AFSCME. *Id.* ¶ 30. On January 18, 2022, this Court entered the Confirmation Order (Bankr. Dkt. 19813 in Case No. 17-03289-LTS), confirming the Commonwealth Plan. *Id.* ¶ 31.

8.      Under the Commonwealth Plan, AFSCME received the right for the AFSCME/SPU Represented Employees to share in the Commonwealth's excess cash surplus. *Id.*

3

¶ 36. Section 56.1 of the Commonwealth Plan provides for the treatment of the AFSCME claims. *Id.* ¶ 38. Section 56.1(b) of the Commonwealth Plan provides: "On or as soon as reasonably practicable after the Effective Date, AFSCME and its member employees, as applicable, shall receive the additional payments and distributions as set forth on Appendix II to Exhibit 'G' [of the Commonwealth Plan]." *Id.* ¶ 39. Appendix II to Exhibit "G" of the Plan is a summary of proposed indicative terms for the "AFSCME Upside Fiscal Plan Surplus Sharing Agreement." *Id.* ¶ 40.[4]

## II. The CAA

9.　Following the entry of the Confirmation Order, the Commonwealth and AlixPartners, as the Calculation Agent, executed the CAA with AFSCME as "limited joinder party." *See* CAA at 1. Specifically, AFSCME agreed to the appointment of AlixPartners under CAA Section 102, "to the calculation methodology set forth on Schedules 1 and 4 of the [CAA]" and to "Section 205 of the [CAA] relating to any challenge to the determinations and calculations made by the Calculation Agent." *Id.* at Joinder page.

10.　The CAA limits AlixPartners' calculation responsibility under Schedule 4 to a *ministerial* function based upon data provided by the Commonwealth when generating the AFSCME Calculation Report. Section 201(a) states "[t]he Calculation Agent shall perform the duties of the 'Independent Agent' . . . based upon the information set forth in the Certified Fiscal Plan *and provided by the Commonwealth*[.]" *Id.* § 201(a) (emphasis added). The Certified Fiscal Plan is certified by the Oversight Board and is created by the Commonwealth, not AlixPartners.

11.　"Working Capital Related and Other Adjustments" is defined as "adjustments made on account of temporary variances, both positive and negative, that are expected to reverse in the future including but not limited to (1) fund extensions from prior fiscal years and the related

---

[4] Appendix II to Exhibit "G" is annexed to the Adversary Complaint as Exhibit 2.

disbursements" and like Section 201 generally provides that "*[s]uch adjustments shall be provided by the Oversight Board (for as long as it is in existence) and will subsequently be provided by the Commonwealth*." *Id.* § 101 (italics added). AlixPartners is required to follow the "express provisions" of the CAA, which necessarily includes calculations based upon the Working Capital figure provided by the Commonwealth. *Id.* § 401(b). No "implied covenants or obligations" or other responsibilities may be thrust upon AlixPartners under the CAA. *Id.*; *see also* § 401(a) ("The Calculation Agent shall not be under any responsibility or duty with respect to the application of any money paid to or by the Commonwealth or others in accordance herewith.").

12.     It follows that AlixPartners' liability is expressly limited. *Id.* §§ 401(a)-(b) ("The Calculation Agent shall not be responsible or liable for special, indirect, punitive or consequential loss or damage of any kind whatsoever . . . [T]he Calculation Agent shall not be liable except for the performance of or failure to perform such duties and obligations as are specifically set forth herein."). AlixPartners also has no liability under the CAA absent willful misconduct or gross negligence, none of which are alleged in the Complaint. *See generally* Adv. Compl.; CAA § 401(a) ("The Calculation Agent shall not be liable in connection with the performance of or failure to perform its duties hereunder except for its own gross negligence or willful misconduct."); *id.* § 401(c) ("The Calculation Agent shall be protected . . . in the absence of gross negligence or willful misconduct. The Calculation Agent may consult with qualified counsel of its selection, who may or may not be of counsel to the Commonwealth, and the advice or opinion of such counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it and in accordance therewith, in the absence of gross negligence or willful misconduct on the Calculation Agent's part.").

5

13.    Section 205 provides for certain meet and confer requirements in the event that AFSCME challenges the AFSCME Calculation Report. *Id.* §§ 205(a)-(c). If the challenges are not resolved, the Calculation Agent's obligations begin and end with (i) determining the amount not in controversy and (ii) sending the final calculation to the Commonwealth and AFSCME. *Id.* § 205(d). The CAA provides only the Commonwealth and AFSCME with rights to initiate an action in the Title III Court, and the Calculation Agent's only role thereafter is to prepare a revised final calculation based on the Title III Court's determination. *Id.* §§ 205(e)-(f). The CAA is clear that while the Title III Court proceeding is in process there can be no Event of Default. *Id.* § 301 ("[N]o Event of Default shall occur due to a challenge under Section 204 or 205 hereof that has not been resolved and is proceeding."). Only if an "Event of Default under [the CAA] shall have occurred and be continuing" – *i.e.*, after this proceeding is resolved – can AlixPartners have any duties to exercise any "rights and powers vested in it by [the CAA]." *Id.* at 401(b).

### III.    The AFSCME/SPU Share Calculation Dispute

14.    On September 27, 2024, AlixPartners submitted the AFSCME Calculation Report for the 2024 Fiscal Year (the "Calculation Report"), which contained the calculation of the AFSCME/SPU Share for the 2024 Fiscal Year. Adv. Compl. ¶ 55. Based on the data and adjustments provided by the Commonwealth, the AFSCME/SPU Share for the 2024 Fiscal Year was $7,720,671. *Id.* ¶ 56. AFSCME challenged the Calculation Report through the informal procedures provided in the CAA. *Id.* ¶ 57.

15.    AFSCME's challenge centered on Section 103(d) of the CAA which provides that the Excess TSA Cash Surplus and the Excess Cash Amount (which ultimately drive the AFSCME/SPU Share) "must be calculated 'on a cash basis using recorded income and expenses as received or paid.'" Adv. Compl. ¶ 46. A comparison of AFSCME's purported "correct

6

calculation" (Adv. Compl. ¶ 75) with the version provided to AFSCME (Adv. Compl., Ex 3), reveals that AFSCME's dispute is limited to the determination of the line item for Working Capital. More specifically, AFSCME claims that "the $2,257,615,984 in deductions for Working Capital Related and Other Adjustments should not have been removed from the TSA Cash Surplus and instead should have been included by the Calculation Agent in calculating the Excess TSA Cash Surplus and the Excess Cash Amount for the 2024 Fiscal Year." Adv. Compl. ¶ 74. Plaintiff further claims that if the deductions in Working Capital Adjustment are reversed, the AFSCME/SPU Share will rise to $160,109,750. *Id.* ¶ 75.

16.     The informal challenge procedures did not produce a resolution. On January 28, 2025, AFSCME commenced this adversary proceeding by filing the Adversary Complaint. The Adversary Complaint asserts two causes of action against the Commonwealth, the Oversight Board, the Secretary of Treasury, the AAFAF, the Executive Director, and AlixPartners for (i) violation of the Commonwealth Plan and the Confirmation Order, and (ii) specific performance of the CAA.[5]

## STANDARD OF REVIEW

17.     For there to be a ripe, justiciable controversy between parties "'[t]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of' the judicial relief sought." *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (citation omitted). When the nature of the dispute is contractual, the plaintiff must identify some duty or performance that

---

[5] On March 10, 2025, AlixPartners provided AFSCME with notice of its intention to file a motion to dismiss the Adversary Complaint (the "AlixPartners Letter"), as required by Section 2(a)(i)(A) of the Court's Third Amended Standing Order [Bnkr. Dkt. 25936] and Paragraph 2 the Joint Stipulation and Agreed Order between AlixPartners and AFSCME [Adv. Pro. Dkt. 12].

was required of the defendant under the operative document that the defendant has not performed or has unequivocally repudiated. *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) ("Plaintiffs also must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep."); *Gonzalez-Camacho v. Banco Popular de Puerto Rico*, 318 F. Supp. 3d 461, 483 (D.P.R. 2018), *aff'd*, 2020 WL 5543934 (1st Cir. July 21, 2020) ("[T]hese general and conclusory breaches of contract claims fail to meet the pleading standard required by *Twombly* . . . and failed to provide any details as to how Banco Popular's actions could be construed as breaches of contract.").

18.     Fed. R. Civ. P. 12(b)(6) requires that a plaintiff's complaint provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007); *id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Courts need not accept as true legal conclusions or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted) (citing *Twombly*, 550 U.S. at 557). The court may consider "documents the authenticity of which are not disputed by the parties . . . documents central to plaintiffs' claim[,] [and] . . . documents sufficiently referred to in the complaint." *Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 86 (1st Cir. 2008) (citations omitted).

8

## ARGUMENT

### I.   THE ADVERSARY COMPLAINT FAILS TO STATE A JUSTICIABLE CONTROVERSY BETWEEN PLAINTIFF AND ALIXPARTNERS

A. As A Matter of Law, Plaintiff Cannot Sue AlixPartners for Ministerial Application of Calculation Inputs Over Which Other Defendants Had Sole Authority

19.    Both of AFSCME's claims as to AlixPartners fail because AFSCME does not and cannot allege any wrongdoing that can be attributed to AlixPartners as Calculation Agent under the Plan, the Confirmation Order or the CAA. In fact, the Adversary Complaint is clear that AFSCME's claims relate to acts allegedly taken by the Commonwealth and the Oversight Board, not the Calculation Agent:

- "[T]he Commonwealth, and the Oversight Board agreed in advance to use the cash basis accounting methodology." Adv. Compl. ¶ 2 (emphasis added).

- "The Commonwealth could not avoid that result – and deprive the AFSCME/SPU Represented Employees of their bargained for rights – by earmarking the excess amounts to pay for future expenses in Year 2 or beyond. . . ." Adv. Compl. ¶ 3 (emphasis added).

- "But, in an effort to shield billions of dollars of excess cash from being shared with AFSCME/SPU Represented Employees, the Oversight Board and the Commonwealth flouted the requirement of using a cash basis calculation method and instead deducted more than $2 billion from the excess cash surplus even though the Commonwealth had not spent a single penny of those funds by June 30, 2024, the close of the 2024 Fiscal Year." Adv. Compl. ¶ 6 (emphasis added).

- "In an attempt to justify their efforts to shield more than $2 billion from inclusion in the calculation of the Excess TSA Cash Surplus and the Excess Cash Amount, **the**

9

**Oversight Board** claimed that the $2,257,615,984 was properly deducted from the TSA Cash Surplus for the 2024 Fiscal Year as Annual Adjustments for Working Capital Related and Other Adjustments." Adv. Compl. ¶ 61 (emphasis added).

20. AlixPartners is alleged only to have "blessed" what others have done. Adv. Compl. ¶ 7. But that assumes, contrary to the CAA, that AlixPartners had discretion or judgment to reject or modify the inputs provided by the Oversight Board. The Adversary Complaint does not and cannot make such an allegation and, in fact, AlixPartners' role is a ministerial one not a discretionary one. *Cf. Russell v. Westchester Cmty. Coll.*, 2017 WL 4326545, at *14 (S.D.N.Y. Sept. 27, 2017) ("A discretionary decision involves 'the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result.'") (citation omitted). As an actor without discretion or authority acts differently from its role under the Plan, Confirmation Order and CAA, AlixPartners should be dismissed. *See Brown v. N. Carolina State Bd. of Elections*, 394 F. Supp. 359, 360 (W.D.N.C. 1975) (certain defendants dismissed from action related to rejection of an application where those defendants had no authority to accept or reject applications); *Roshinsky v. Taxicab Indus. Pension Fund*, 2010 WL 335088, at *3 (W.D.N.Y. Jan. 22, 2010) (dismissing Nationwide, the entity responsible for the ministerial act of remitting payments pursuant to an annuity contract, and finding that there was "no indication that Nationwide was a plan sponsor or fiduciary, or that it performed any discretionary duties concerning the subject Plan").[6]

---

[6] The ministerial responsibilities of the Calculation Agent under the CAA are further demonstrated in Schedule 4 of the CAA. A comparison of AFSCME's purported "correct calculation" of Schedule 4 CAA (*see* table at Adv. Compl. ¶ 75) with the currently extant one performed by AlixPartners (Adv. Compl., Ex 3) again reveals that AFSCME's dispute in this proceeding is limited to changing the value of the input entered for line item #8 -- Working Capital. But AlixPartners as Calculation Agent has no discretion to change line 8. Its role is to ensure lines 10, 12, 13, and 15 are calculated correctly, not the inputs in lines 1-9, which the Calculation Agent relies on the Commonwealth and/or Oversight Board to provide. *See* CAA § 201(a); *id.* § 101 (definition of "Working Capital Related and Other

21.     Simply put, AlixPartners' alleged "refusal" in its capacity as Calculation Agent to correct alleged deviations from cash accounting methods in the Working Capital input provided to it by the Commonwealth (Adv. Compl. ¶ 79) does not state a cause of action because it wrongly assumes a duty in the Calculation Agent that is not in any of the operative documents upon which the Adversary Complaint is based and, in fact, is contradicted by those very documents.

B.    Other Sections of the CAA Confirm That Any Claim Against AlixPartners is Premature Pending the Outcome of This Proceeding

22.     Other Sections of the CAA discussed above, including the dispute resolution procedures in Section 205 that AFSCME expressly joined, establish that Plaintiff's claims are nonjusticiable as to AlixPartners because they are unripe. AFSCME asks this Court for specific performance, but there is nothing for AlixPartners to perform unless and until this Court resolves the underlying dispute between Plaintiff and the other Defendants in which AlixPartners has no say: what is the input AlixPartners should use for Working Capital in line 8 of Schedule 4 for the 2024 Fiscal Year?

23.     Sections 205(e), (f), 301, and 302 of the CAA expressly state that "[u]pon the final resolution of any challenge or proceeding hereunder" the Calculation Agent shall prepare and deliver a "revised final calculation of the AFSCME/SPU Share" and that there shall be no Event of Default by the Calculation Agent by virtue of its awaiting that resolution. The Adversary Complaint identifies no obligation or duty of the Calculation Agent under the Plan, the Confirmation Order or the CAA that has not been performed or has been repudiated. Accordingly, the claims against AlixPartners must also be dismissed as premature. *Mun. Claims Mgmt. Servs. Inc. v. Asociación de Residentes de Caminito Inc.*, 2023 WL 12030705, at *4 (D.P.R. Feb 14, 2023) ("[B]ecause that Award is being properly challenged, the amount due to MCMS is not yet

---

Adjustments"); *id.*, Schedule 4.

11

certain. Regardless of whether we look at this as a situation where MCMS is not yet injured because the payment amount is not yet certain or a situation where there are facts that remain to be developed for us to grant a remedy, both roads lead to the conclusion that this case is not yet ripe."); *see also Satellite Broadcasting Cable, Inc. v. Telefonica de España*, 786 F. Supp. 1089, 1095 (D.P.R. 1992), *aff'd as modified*, 807 F. Supp. 210 (D.P.R. 1992) ("conditional obligations, by nature, limit the ripening of certain contractual rights to the occurrence of the particular condition") (dismissing unripe claim); *In re Birriel Rivera*, 610 B.R. 174, 181-82 (Bankr. D.P.R. 2019) ("To determine whether a case is ripe for review, the plaintiff must adduce facts sufficient to establish both fitness and hardship . . . if the claims are of a conditional nature, then a finding of hardship is unlikely.") (dismissing unripe claim).

## II. ALIXPARTNERS JOINS IN THE MOTIONS TO DISMISS OF THE OTHER DEFENDANTS

24. Both of AFSCME's claims fail as a matter of law. AFSCME's first cause of action, for "violat[ion of] the Commonwealth Plan and the Confirmation Order," is not legally plausible or cognizable. There is no independent cause of action for failure to comply with a court order. Rather, AFSCME must bring a civil contempt motion in the underlying bankruptcy case. *See*, *e.g.*, *In re Consol. Indus.*, 360 F.3d 712, 716 (7th Cir. 2004). To establish civil contempt, plaintiff must show that (1) "the alleged contemnor had notice that he was within the order's ambit," (2) "the order was clear and unambiguous," (3) "the alleged contemnor had the ability to comply," and (4) "the order was indeed violated." *U.S. v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (citations and internal quotations omitted). AFSCME ignores these elements in the Adversary Complaint and alleges no facts that would permit a finding of civil contempt.[7]

---

[7] This argument is thoroughly detailed in the Commonwealth and Oversight Board's motion to dismiss. AlixPartners joins in that argument here.

12

25. Likewise, it is well-established that specific performance is not a standalone cause of action. *See*, *e.g.*, *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 353 n.3 (1st Cir. 2013) (holding that "injunctive relief is not a stand-alone cause of action"); *Redondo Const., Co. v. Izquierdo*, 929 F. Supp. 2d 1, 11 (D.P.R. 2012) (noting that specific performance is a *remedy* for a breach of contract claim). The Adversary Complaint does not allege that any Defendant has breached the CAA. Nonetheless, AFSCME's second cause of action seeks specific performance, which is improper. The specific performance claim must be dismissed on this basis alone.

26. In any event, AFSCME has not demonstrated its entitlement to specific performance. Specific performance will not be granted where there exists an adequate remedy at law, such as money damages. *Next Step Medical v. Bromedicon*, 190 D.P.R. 474, 486, 90 P.R. Offic. Trans. 34 (2014). Here, AFSCME alleges that AlixPartners miscalculated the AFSCME/SPU Share for the 2024 Fiscal Year. Specifically, AFSCME claims that $2,257,615,984 in deductions for Working Capital Related and Other Adjustments should not have been removed from the TSA Cash Surplus. Adv. Compl. ¶ 74. As a result, AFSCME asserts that the AFSCME/SPU Share should be $160,109,750. *Id.* ¶¶ 60, 105. In sum, AFSCME readily admits that it has only suffered money damages that are certain and easily ascertainable. Hence, AFSCME

13

has an adequate remedy at law in the form of money damages.[8] An adequate remedy at law is fatal

to AFSCME's specific performance claim.[9]

## **CONCLUSION**

For all the foregoing reasons, AlixPartners respectfully requests that the Court dismiss the

claims asserted against it in the Adversary Complaint.

---

[8] Furthermore, AFSCME would be entitled to receive money damages from the Commonwealth—not AlixPartners. *See*, *e.g.*, Adv. Compl. ¶ 1 ("the right [is] for the AFSCME/SPU Represented Employees to share in the *Commonwealth's* excess cash surplus") (emphasis added). The CAA also makes clear that AlixPartners is not responsible for paying any "*damage of any kind whatsoever*" as a result of its calculations. CAA § 401(a) (emphasis added); *see also id.* § 402. Accordingly, AFSCME concedes that it is seeking money damages only from the Commonwealth and does not otherwise allege that there is no adequate remedy at law. Adv. Compl. ¶ 132.

[9] The CAA provides that AFSCME "*may*" seek specific performance in the event that a challenge of the determinations made in the Calculation Report remains unresolved. CAA § 205(e). AFSCME, however, is not entitled to specific performance under the CAA. Specific performance is a discretionary remedy. *U.S. v. Santiago-Rodriguez*, 993 F. Supp. 31, 36 (D.P.R. 1998) ("Specific performance is an equitable remedy that is not a matter of absolute right."); *Curley v. Mobil Oil Corp.*, 860 F.2d 1129, 1134-35 (1st Cir. 1988) ("The district court has 'a reasonable range of discretion . . . with respect to granting or denying specific performance.'").

14

Dated: April 15, 2025

**ADSUAR**

*/s/ Eric Pérez-Ochoa*
Eric Pérez-Ochoa, Esq.
USDC-PR No. 206314
epo@amgprlaw.com

*/s/ Luis A. Oliver-Fraticelli*
Luis A. Oliver-Fraticelli, Esq.
USDC-PR No. 209204
loliver@amgprlaw.com

PO Box 70294
San Juan, Puerto Rico 00936-8294
Telephone: (787) 281-1813

**WOLLMUTH MAHER & DEUTSCH LLP**

Paul R. DeFilippo, Esq. (*pro hac vice* pending)
Lyndon M. Tretter, Esq. (*pro hac vice* pending)
Joseph F. Pacelli, Esq. (*pro hac vice* pending)
Nicholas A. Servider, Esq. (*pro hac vice* pending)
500 Fifth Avenue
New York, NY 10110
Phone: 212-382-3300
pdefilippo@wmd-law.com
ltretter@wmd-law.com
jpacelli@wmd-law.com
nservider@wmd-law.com

*Counsel to Defendant AlixPartners, LLP*

15

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2025, a copy of the foregoing Motion was served on counsel of record via Electronic Mail.

*/s/Eric Pérez-Ochoa*
Eric Pérez-Ochoa

16

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors[1] | PROMESA Title III<br><br>No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES<br><br>   Plaintiff,<br><br>v.<br><br>THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; HON. ANGEL PANTOJA-RODRÍGUEZ, in his official capacity as Secretary of the Puerto Rico Department of Treasury; PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; HON. FRANCISCO J. DOMÉNECH FERNÁNDEZ, in his official capacity as Executive Director of the Puerto Rico | PROMESA Title III<br><br>Adv. Proc. No. 25-00004-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (v) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations). On October 30, 2024, the Title III case for the Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) was closed.

Fiscal Agency and Financial Advisory Authority; and ALIXPARTNERS, LLP,

      Defendants.

**ORDER GRANTING ALIXPARTNERS LLP'S
MOTION TO DISMISS THE ADVERSARY COMPLAINT**

Upon *AlixPartners LLP's Motion to Dismiss the Adversary Complaint* (Docket Entry No. ___ ) (the "Motion"); and the Court having determined it has subject matter jurisdiction of this matter pursuant to section 306 of PROMESA; and it appearing that venue in this district is proper pursuant to section 307 of PROMESA; and upon consideration of all other papers filed in support and in opposition to the Motion, and all other proceedings regarding the Motion; and the Court having determined that AlixPartners LLP provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED and DECREED that: The Motion is GRANTED.

1.      The Adversary Complaint is DISMISSED WITH PREJUDICE.

2.      The Clerk of the Court is directed to enter judgment accordingly and close the above-captioned adversary proceeding.

3.      This Order resolves Docket Entry No. _____ in Adversary Proceeding No. 25-00004.

SO ORDERED.

Dated:

/s/ _____

LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

2